IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
CRYSTAL WARREN ABLE,            )
                                )
          Plaintiff,            )
                                )
     v.                         )    1:14CV1078
                                )
CAROLYN W. COLVIN,              )
Acting Commissioner of Social   )
Security,                       )
                                )
          Defendant.            )
```

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Plaintiff Crystal Warren Able brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), codified as amended at 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Doc. 1.) The court has before it the certified administrative record,[1] as well as the parties' cross-motions for judgment (Docs. 10, 12). For the reasons that follow, the court will enter judgment for Defendant.

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Doc. 8.)

I.  **PROCEDURAL HISTORY**

Plaintiff applied for SSI, alleging a disability onset date of July 1, 2007.  (Tr. at 256-65.)  Upon denial of that application initially (Tr. at 112-27, 151-55) and on reconsideration (Tr. at 128-45, 159-68), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. at 169-71).  Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing (Tr. at 36-98), at which time Plaintiff amended her onset date of disability to February 1, 2012 (see Tr. at 39, 281).  The ALJ subsequently ruled Plaintiff not disabled under the Act.  (Tr. at 11-35.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. at 1-5), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1.  [Plaintiff] has not engaged in substantial gainful activity since February 1, 2012, the amended alleged onset date.
>
> 2.  [Plaintiff] has the following severe impairments: obesity; asthma; and a mood disorder, variously diagnosed as bipolar disorder and depressive disorder.
>
>      . . . .
>
> 3.  [Plaintiff] does not have an impairment or combination of impairments that meets or medically

equals the severity of one of the listed impairments
in 20 CFR Part 404, Subpart P, Appendix 1.

> . . . .
>
> 4.  [Plaintiff] has the residual functional capacity
> to perform light work . . . , except that she can
> frequently climb, stoop, and ladder climb; and she
> should avoid concentrated exposure to irritants and
> hazardous conditions. She retains the mental residual
> functional capacity to perform simple, routine tasks;
> follow simple, short instructions; make simple, work-
> related decisions; and adapt to a few workplace
> changes. She can have frequent interaction with the
> general public, coworkers, and supervisors. She needs
> an assistive device to ambulate.
>
> . . . .
>
> 5.  [Plaintiff] is unable to perform any past
> relevant work.
>
> . . . .
>
> 9.  Considering [Plaintiff's] age, education, work
> experience, and residual functional capacity, there
> are jobs that exist in significant numbers in the
> national economy that [she] can perform.
>
> . . . .
>
> 10. [Plaintiff] has not been under a disability, as
> defined in the [] Act, since February 1, 2012, the
> amended alleged onset date.

(Tr. at 16-29 (bold font and internal parenthetical citations omitted).)

## II. STANDARD OF REVIEW

In cases such as this one, where the matter was previously adjudicated by an ALJ, review of the ALJ's ruling is limited to

the following two issues: (1) whether substantial evidence supports the ALJ's decision; and (2) whether the ALJ applied the correct legal standards. See 42 U.S.C. § 405(g); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The question is not whether Plaintiff is disabled, but whether the ALJ's finding that Plaintiff is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). If a reasonable mind might accept as adequate the evidence in support of the ALJ's decision, the court should not reweigh the evidence or substitute its judgment for that of the ALJ. Hays, 907 F.2d at 1456.

### III. DISCUSSION

Plaintiff contends that the court should overturn the ALJ's finding of no disability on these grounds:

Substantial evidence fails to support:

(1) "[t]he ALJ's finding that [Plaintiff] can frequently interact with the general public, coworkers and supervisors" (Pl.'s Br. in Supp. of Mot. for J. ("Pl.'s Br.") (Doc. 11) at 5);

(2) "[t]he ALJ's RFC assessment failed to reflect [Plaintiff's] moderate difficulties in concentration,

- 4 -

persistence or pace" (id. at 10) and contained "a flawed credibility assessment" (id. at 11); and

3) "[t]he ALJ improperly discounted lay evidence from [Plaintiff's] family" (id. at 13).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Def.'s Mem. in Supp. of Mot. for J. on the Pleadings ("Def.'s Mem.") (Doc. 13) at 5-20.)

### A. Frequent Interaction with Others

In Plaintiff's first issue on review, she asserts that the ALJ erred by finding that Plaintiff could perform work involving frequent interaction with the general public, coworkers, and supervisors. (Pl.'s Br. (Doc. 11) at 5-10.) Plaintiff maintains that the record supports a limitation to only occasional interaction with others (id. at 5), and provides two bases for her argument: (1) the ALJ gave "significant weight" to the opinions of two state agency consultants who opined that Plaintiff "would require limited interaction with others" (id. at 6 (citing Tr. at 26, 125, 143)), and to a psychological consultative examiner who assessed Plaintiff's ability to relate to coworkers as "moderately impaired" (id. at 7 (citing Tr. at 26, 500); and (2) "[l]ay evidence [from Plaintiff's mother and daughter] also supports a limitation to occasional interaction with others" (id. at 8 (citing Tr. at 317, 318, 347)).

- 5 -

Plaintiff argues that the ALJ's error prejudiced her, because the VE testified that no jobs existed for a person with a residual functional capacity ("RFC") identical to the ALJ's RFC but limited to occasional rather than frequent interaction with others. (Id. at 9 (citing 80, 81).) Plaintiff's contentions do not warrant relief.

Here, as a general matter, the ALJ discussed Plaintiff's testimony, the objective medical evidence, and the medical and lay opinion evidence relating to Plaintiff's mental impairment in a fair degree of detail. (See Tr. at 18-19, 22, 26-27.) At step two of the sequential evaluation process, the ALJ determined that Plaintiff's mood disorder constituted a severe impairment (see Tr. at 16), and at step three, the ALJ found that, although Plaintiff's mood disorder did not meet or equal a listed impairment, it resulted in moderate limitation in Plaintiff's social functioning. (See Tr. at 22.) In that regard, the ALJ noted that Plaintiff "goes to the grocery store once per month for thirty to forty minutes," "leaves the house to visit her grandmother and her daughter at their houses, spends time with her grandchildren, [] talks with her neighbors," "takes public transportation," "went to school on Wednesdays," and "went on vacation to New Orleans." (Tr. at 22.)

The ALJ then assessed Plaintiff's credibility in conjunction with the RFC determination (see Tr. at 23-25), and found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely credible." (Tr. at 24.) The ALJ again detailed Plaintiff's activities of daily living and concluded that those "activities demonstrate that [Plaintiff] can lift, balance, stand, walk, sit, perform simple and routine tasks, sustain attention and concentration, and be around other people." (Tr. at 25 (emphasis added).)

The ALJ also evaluated the opinion evidence of record as it pertained to Plaintiff's mental impairments (see Tr. at 25-27), and gave "significant weight" to the opinions of state agency psychological consultants Keith Noles, Ph.D., and Daniel Nelson, Psy.D., that Plaintiff "would require limited interaction with others" (Tr. at 26 (emphasis added) (citing Tr. at 125, 143)), and to the opinion of consultative psychological examiner Samuel Gray, Psy.D., rating Plaintiff as "moderately impaired in her ability to relate to others." (Id. (emphasis added) (citing Tr. at 500).) Plaintiff contends that the ALJ's decision to accord "significant weight" to these opinions compelled the ALJ to limit Plaintiff to occasional as opposed to frequent interaction with others; however, Plaintiff does not point the court to any

- 7 -

authority supporting the view that <u>limited</u> interaction and <u>moderate</u> impairment in social functioning must translate to less than frequent interaction with others. (<u>See</u> Pl.'s Br. (Doc. 11) at 5-10.) Although the ALJ's adoption of those opinions logically must result in <u>some</u> limitation in social functioning, <u>see</u> <u>Kniffen v. Soc. Sec. Admin.</u>, Civil Action No. 14-CV-10106, 2015 WL 687323, at *7 (E.D. Mich. Feb. 18, 2015) (unpublished) (noting that "[a] 'moderate' limitation [in social functioning] (representing the mid-point on a five-point scale of none, mild, moderate, marked, and extreme) implies the presence of <u>at least some degree of limitation</u>" (emphasis added)), the ALJ here did limit Plaintiff to <u>frequent</u> interaction with others (defined as occurring from one-third up to two-thirds of an eight-hour workday, <u>see</u> Social Security Ruling 83-10, <u>Titles II and XVI: Determining Capability to Do Other Work – The Medical-Vocational Rules of Appendix 2</u>, 1983 WL 31251, at *6 (1983) ("SSR 83-10")), as opposed to <u>constant</u> interaction (defined as existing two-thirds or more of an eight-hour workday, <u>see</u> Social Security Administration, <u>Program Operations Manual System</u>, § DI 25001.001, ¶ B.35).

Plaintiff's reliance on the statements of her mother and daughter as support for a limitation to occasional interaction similarly fails. (<u>See</u> Pl.'s Br. (Doc. 11) at 8 (citing Tr. at

- 8 -

Case 1:14-cv-01078-WO-LPA   Document 16   Filed 03/28/16   Page 8 of 20

317, 318, 347).) As discussed in more detail below in the context of Plaintiff's third assignment of error, the ALJ gave "little weight" to the opinions of Plaintiff's mother and daughter (Tr. at 27), and substantial evidence supports that determination.

Lastly, even assuming, arguendo, that the ALJ erred by failing to limit Plaintiff to occasional interaction with others, any such error remains harmless under the circumstances of this case. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Based on the VE's testimony, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, she remained able to perform the jobs of cashier, parking lot attendant, ticket taker, and laundry sorter. (See Tr. at 28-29.) The Dictionary of Occupational Titles ("DOT") listing for the laundry sorter job rates the requirements of "Taking Instructions-Helping" as "Not Significant" and "Talking" as "Not Present." G.P.O., DOT, § 361.687-014, 1991 WL 672991. Moreover, the DOT code for the laundry sorter job contains a fifth digit of "8," reflecting the lowest possible level of

human interaction that exists in the labor force. See DOT, App'x B, 1991 WL 688701; see also Cobb v. Colvin, No. 2:13CV115 TCM, 2014 WL 6845850, at *19 (E.D. Mo. Dec. 3, 2014) (unpublished) ("As defined in the DOT, the level of interaction designated for the[se] job[s] . . . is 'not significant' and is rated at a Level 8. . . . This designated level of interaction is compatible with an RFC limiting a claimant to only occasional contact with coworkers, supervisors, and the public." (internal citations omitted)). The VE testified that 4,000 laundry sorter jobs existed in the national economy (see Tr. at 92), and Plaintiff has not challenged the VE's testimony in that regard.

In sum, Plaintiff's first issue on review fails to entitle her to relief.

**B.    RFC Assessment**

In Plaintiff's second assignment of error, she alleges that "[t]he ALJ's RFC assessment is not supported by substantial evidence" in two respects. (Pl.'s Br. (Doc. 11) at 10.) First, Plaintiff maintains that the ALJ failed to account for Plaintiff's moderate limitation in concentration, persistence, or pace in the RFC. (See id. at 10-11.) Specifically, Plaintiff contends that the Fourth Circuit's recent decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), holds that a limitation to simple, routine tasks does not account for

- 10 -

moderate limitation in concentration, persistence, or pace, because "the ability to perform simple tasks differs from the ability to stay on task," and that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence[,] or pace." (Pl.'s Br. (Doc. 11) at 10-11 (citing Mascio, 780 F.3d at 638).) Second, Plaintiff asserts that the ALJ's credibility assessment is "flawed" because "[t]he ALJ never explained how [Plaintiff's] activities of daily living were inconsistent with her testimony regarding her lifting, sitting, and standing ability." (Id. at 12-13 (citing Mascio, 780 F.3d at 640).) Plaintiff's contentions do not warrant relief.

After the ALJ's decision in this case, the Fourth Circuit decided Mascio, which directly addressed the relationship between a moderate limitation in concentration, persistence, or pace and the inclusion of simple, routine, and repetitive tasks and/or unskilled work in the RFC and hypothetical question. Id. at 638. Specifically, the Fourth Circuit held as follows:

> [W]e agree with other circuits that an ALJ does not account "for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits). As Mascio points out, the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation

> would account for a claimant's limitation in
> concentration, persistence, or pace.
>
> Perhaps the ALJ can explain why Mascio's moderate
> limitation in concentration, persistence, or pace at
> step three does not translate into a limitation in
> Mascio's [RFC]. For example, the ALJ may find that
> the concentration, persistence, or pace limitation
> does not affect Mascio's ability to work, in which
> case it would have been appropriate to exclude it from
> the hypothetical tendered to the [VE]. See id. at
> 1181. But because the ALJ here gave no explanation, a
> remand is in order.

Mascio, 780 F.3d at 638. However, the Mascio court also allowed for the possibility that an ALJ could adequately explain why moderate limitation in concentration, persistence, or pace would not result in any limitation in the RFC. Id. The Western District of Virginia recently had occasion to discuss this very point:

> Mascio does not broadly dictate that a claimant's
> moderate impairment in concentration, persistence, or
> pace always translates into a limitation in the RFC.
> Rather, Mascio underscores the ALJ's duty to
> adequately review the evidence and explain the
> decision . . . .
>
>         . . . .
>
> An ALJ may account for a claimant's limitation with
> concentration, persistence, or pace by restricting the
> claimant to simple, routine, unskilled work where the
> record supports this conclusion, either through
> physician testimony, medical source statements,
> consultative examinations, or other evidence that is
> sufficiently evident to the reviewing court.

Jones v. Colvin, Civil Action No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (unpublished) (emphasis added); see also Hutton v. Colvin, Civil Action No. 2:14-CV-63, 2015 WL 3757204, at *2-3 (N.D. W. Va. June 16, 2015) (unpublished) (finding reliance on Mascio "misplaced" and that ALJ "gave abundant explanation" for why unskilled work adequately accounted for claimant's moderate limitation in concentration, persistence, or pace, where ALJ relied on the claimant's daily activities and treating physicians' opinions of claimant's mental abilities).

Here, the ALJ adequately explained why the mental restrictions in the RFC adequately accounted for Plaintiff's moderate limitation in concentration, persistence, or pace. At step three, the ALJ gave "significant weight" to the opinion of state agency consultant Dr. Daniel Nelson that Plaintiff experienced moderate difficulties in maintaining concentration, persistence, or pace. (Tr. at 22 (citing Tr. at 129-44).) Then, in determining Plaintiff's mental RFC, the ALJ again gave "significant weight" to Dr. Nelson's opinion that, despite moderate limitation in concentration, persistence, or pace, Plaintiff was "able to sustain attention and concentration for simple tasks." (Tr. at 26; see also Tr. at 142 (emphasis added).) The ALJ thus explicitly considered Plaintiff's ability

- 13 -

to "stay on task" which the Mascio court distinguished from the ability to perform simple tasks. See Mascio, 780 F.3d at 638. The ALJ further noted that Dr. Nelson's opinions were "consistent with [Plaintiff's] ongoing treatment records from Daymark Recovery Services, as well as [Plaintiff's] reported activities of daily living." (Tr. at 26; see also Tr. at 18-19 (ALJ's discussion of Plaintiff's treatment with Daymark); Tr. at 25 (ALJ's discussion of Plaintiff's daily activities).)  The ALJ has thus created a "logical bridge" between the record evidence and her conclusion that Plaintiff can perform simple tasks, notwithstanding moderate limitation in concentration, persistence, or pace, see Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000), and remand is not warranted under Mascio. See Del Vecchio v. Colvin, Civil Action No. 1:14CV116, 2015 WL 5023857, at *6 (W.D.N.C. Aug. 25, 2015) (unpublished) ("Here, unlike in Mascio, the ALJ discussed substantial record evidence in determining [the claimant's] mental RFC, and his explicit reliance on [the state agency consultant's] opinion adequately explains why [the claimant's] limitations in concentration, persistence, or pace did not translate into any additional restrictions . . . . Therefore, the Court is not left to guess at the ALJ's decision-making process."); compare Pulliam v. Colvin, 1:13CV176, 2016 WL 843307, at *5-7 (M.D.N.C. Mar. 1,

- 14 -

2016) (unpublished) (finding ALJ's reliance on state agency consultants' opinions insufficient to satisfy Mascio where those opinions were "potentially inconsistent, yet the ALJ grouped them together and adopted both without distinguishing between them" and the ALJ failed to "acknowledge the distinction between performing simple tasks and the ability to stay on task, which was so critical to the Mascio decision").

Plaintiff's allegation that the ALJ conducted a "flawed" credibility analysis because she did not explain why she discredited Plaintiff's testimony about her abilities to lift, sit, and stand similarly fails. (See Pl.'s Br. (Doc. 11) at 11.) In evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, an ALJ:

> must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (internal citations and quotation marks omitted). The ALJ here fully complied with Craig. The ALJ first considered Plaintiff's testimony, including her statements "that she can walk from two to four minutes, stand five to

- 15 -

twenty minutes, sit for twenty to thirty minutes, and lift twelve to fourteen pounds." (Tr. at 24.) The ALJ found those statements "not entirely credible for the reasons explained in this decision." (Id.)[2] The ALJ then provided multiple reasons for finding Plaintiff not entirely credible: (1) consultative examiner Dr. Samuel Gray noted that Plaintiff exhibited possible symptom exaggeration and provided a rule-out diagnosis of malingering; 2) Plaintiff had prior convictions for writing worthless checks and welfare fraud; 3) Plaintiff's testimony contained inconsistencies regarding whether she had earned any money, traveled outside of Winston-Salem, or taken any classes since 2007; 4) the objective medical evidence in the record did not support Plaintiff's allegations of disability; and 5) Plaintiff's activities of daily living did not support her allegations of disability. (See Tr. at 24-25.) This analysis complies with Craig and allows the court to "trace the path" of

---

[2] Plaintiff's reliance on Mascio to support her credibility argument is misplaced. The ALJ here did not use "the vague (and circular) boilerplate statement" criticized in Mascio: "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Mascio, 780 F.3d at 639 (emphasis added). Moreover, unlike in Mascio, the ALJ here adequately assessed Plaintiff's credibility. See id. ("The ALJ's error [in using the forbidden boilerplate language] would be harmless if he properly analyzed credibility elsewhere.").

- 16 -

Case 1:14-cv-01078-WO-LPA Document 16 Filed 03/28/16 Page 16 of 20

the ALJ's reasoning.  Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995).

In conclusion, Plaintiff's second assignment of error fails as a matter of law.

**C.   Lay Evidence**

Finally, Plaintiff argues that the ALJ erred by "improperly discount[ing] lay evidence from [Plaintiff's] family."  (Pl.'s Br. (Doc. 11) at 13.)  In particular, Plaintiff claims that the ALJ could not use "natural bias" as a reason to discount written statements submitted by Plaintiff's mother and daughter supportive of her claim for disability.  (Id. at 13-14 (citing Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999), and Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996)).)  Plaintiff's argument provides no basis for relief.

ALJs may consider evidence from non-medical sources, such as statements from spouses, parents, caregivers, siblings, other relatives, friends, neighbors, and clergy, to determine the severity of a claimant's impairments and his or her residual ability to work.  See 20 C.F.R. § 416.913(d)(4).  See also Social Security Ruling 06-03p, Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering

<u>Decisions on Disability by Other Governmental and Nongovernmental Agencies</u>, 2006 WL 2329939, at *2 (Aug. 9, 2006) ("SSR 06-03p"). "[I]nformation from [non-medical sources] may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function"[;] however, in considering evidence from these sources, "<u>it would be appropriate to consider such factors as the nature and extent of the relationship</u>, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence."  SSR 06-03p, 2006 WL 2329939, at *2, *6; see <u>Cooper v. Astrue</u>, No. 2:08-CV-18-FL, 2009 WL 928548, at *5-6 (E.D.N.C. Apr. 3, 2009) (unpublished) ("If the ALJ decides to reject lay testimony concerning a [c]laimant's pain or other symptoms, the ALJ must do so explicitly and with sufficient specificity to enable the court to decide whether there are legitimate reasons for the ALJ's disbelief and whether the ALJ's determination is supported by substantial evidence." (citing <u>Hatcher v. Sec'y, Dep't of Health & Human Servs.</u>, 898 F.2d 21, 23-25 (4th Cir. 1989))).

   Here, the ALJ summarized the written statements from Plaintiff's mother and daughter (<u>see</u> Tr. at 27), and then evaluated them as follows:

- 18 -

> These opinions are given little weight as they are lay opinions from family members with a natural bias for [Plaintiff], and were based on casual observation rather than objective medical evidence.  <u>These opinions are not consistent with the objective medical evidence of record or [Plaintiff's] activities of daily living</u> . . . .

(Id. (emphasis added).)  Thus, the ALJ did not discount the lay evidence <u>solely</u> on the basis of natural bias.  See <u>Morgan v. Barnhart</u>, 142 F. App'x 716, 724 (4th Cir. 2005) ("Morgan argues that the ALJ impermissibly discredited the questionnaire responses submitted by her husband and daughter on the basis of inherent familial bias.  While we agree with Morgan's argument in principle, we would not reach the issue here, because the ALJ did not, in fact, discredit the observations of Morgan's family members solely because of inherent familial bias.").  Further, SSR 06-03p expressly permits an ALJ to consider "the nature and extent of the relationship" between a claimant and a third-party source, as well as "any other factors that tend to support or refute the evidence."  SSR 06-03p, 2006 WL 2329939, at *6.  Thus, the ALJ did not commit error in relying on the above-quoted reasons for rejecting the lay evidence in this case.

**IV. CONCLUSION**

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED,** that Plaintiff's Motion for Judgment Reversing the Commissioner (Doc. 10) is **DENIED,** that Defendant's Motion for Judgment on the Pleadings (Doc. 12) is **GRANTED,** and that this action is dismissed with prejudice.

A Judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion and Order.

This the 28th day of March, 2016.

_____
United States District Judge